

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
SIK GAEK, INC. also known as Silk Gaek, Inc.,   :   10-CV-4077 (ARR) (VVP)
                                                :
                         Plaintiff,             :   NOT FOR ELECTRONIC
                                                :   OR PRINT PUBLICATION
         -against-                              :
                                                :   OPINION & ORDER
YOGI'S II, INC. and DANIEL KIM,                 :
                                                :
                         Defendants.            :
                                                :
------------------------------------------------------------------- X

ROSS, United States District Judge:

On July 25, 2014, this court denied plaintiff's motion for summary judgment and granted defendant Daniel Kim's motion for summary judgment except with respect to plaintiff's potential claim against Kim for damages under 15 U.S.C. § 1120 for false or fraudulent trademark registration of the "Sik Gaek" marks at issue in this litigation, which was suggested by the facts alleged in plaintiff's papers but not expressly alleged in its initial complaint. See Dkt. #202. In its order, the court directed plaintiff to file a proposed amended complaint stating its § 1120 claim, which would be plaintiff's last and best pleading given that the parties had already spent four years litigating this dispute and reached the summary judgment stage.[1] The parties were directed to submit additional briefing only with respect to the § 1120 claim against Kim. Having reviewed plaintiff's proposed amended complaint, the court denies plaintiff leave to amend its complaint as against Kim, and plaintiff's complaint against Kim is dismissed in its entirety.

---

[1] The court also permitted plaintiff to assert a claim for cancellation of defendant Yogi's II, Inc.'s, trademark rights pursuant to 15 U.S.C. § 1119. As the court noted at that time, Yogi's is the registered owner of the trademarks at issue in this case and has, so far, not appeared to defend the suit. Because defendant Kim has expressly disavowed relation to Yogi's, this claim appears rather irrelevant to Kim and is more appropriately pursued against the non-appearing entity.

1

For purposes of the decision, the court assumes the parties' familiarity with the facts and procedural history and relies on the background provided in its prior order.

## DISCUSSION

Although plaintiff is represented by counsel, the court generously granted plaintiff an opportunity to submit a proposed amended complaint asserting a claim against Kim that was not actually raised in plaintiff's original complaint but was suggested by the factual allegations and, nonetheless, tangentially argued by the parties on summary judgment. The court requested that plaintiff submit a proposed amended complaint as well as additional briefing as to why it should be permitted to amend. At this stage of the litigation, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "It is settled that the grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court." Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330 (1971). "A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007). Having reviewed plaintiff's proposed amended complaint and the parties' papers, the court finds that amendment would be futile because plaintiff has failed to adequately show cognizable damages under § 1120.

### I. Plaintiff's § 1120 claim against Kim must fail for failure to show cognizable damages.

The Lanham Act provides a mechanism for those injured by false or fraudulent statements in a trademark registration application to hold the person responsible for those statements civilly liable. The relevant section states:

> Any person who shall procure registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or

2

> by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof.

15 U.S.C. § 1120.

In its proposed amended complaint, plaintiff seeks to hold Kim liable under § 1120 for making false or misleading representations on five trademark registration applications that he signed on behalf of non-appearing defendant Yogi's II, Inc. ("Yogi's") and some of which resulted in trademarks being registered to Yogi's. Plaintiff asserts that it has been "harmed by" defendant's alleged conduct. Proposed Am. Compl., Dkt. #204, ¶¶ 18, 24, 30, 36, 47. Plaintiff asserts that Kim has "never withdrawn the five applications" and "has continued to block plaintiff's trademark application and rights." Id. ¶ 77. Plaintiff appears to assert that it has been harmed by the denial of its own applications for the registration of the marks due to Yogi's antecedent applications and registrations. Plaintiff further asserts that it "has sustained damages" as a result of defendants' conduct but does not identify what those damages are in its proposed amended complaint. Id. ¶ 88. As in its original complaint, it seeks the same $2,000,000 in compensatory damages relating to Yogi's alleged breach of a licensing agreement under which Yogi's was purportedly required to pay a $2,000,000 license fee, as well as punitive damages and legal costs and fees. In its reply, plaintiff argues that the $2,000,000 allegedly owed as a royalty fee under the breached license agreement is an appropriate measure of its damages.

The court need not reach the rest of the merits of plaintiff's § 1120 claim against Kim because its claim must fail for failure to allege cognizable damages. Damages available under § 1120 are circumscribed. Only those damages "sustained in consequence" of the alleged statutory violation will be recognized. Courts interpreting this provision have consistently held that the injury alleged under § 1120 must be a "direct" and "proximate" result of the conduct violating the statute. See Landstrom v. Thorpe, 189 F.2d 46, 54 (8th Cir. 1951); Santander Consumer

USA Inc. v. Walsh, 762 F. Supp. 2d 217, 234 (D. Mass. 2010); Jackson v. Lynley Designs, Inc., 729 F. Supp. 498, 500 (E.D. La. 1990). "The damages allegedly incurred as a result of the fraud must be clearly articulated." McCarthy on Trademarks § 31:85 (citing Jackson, 792 F. Supp. 498).

First, plaintiff cannot recover its asserted $2,000,000 royalty fee under § 1120 because any alleged loss of the license fee under the purported license agreement was not a direct and proximate result of trademark registrations based on false or fraudulent application statements---rather, any royalty fee loss resulted from plaintiff's asserted breach of contract claim against Yogi's. The authorities relied on by plaintiff to argue that it should receive its royalty fee as damages are wholly inapposite, as they deal with the measurement of damages for trademark infringement under different sections of the Lanham Act, and not with damages under § 1120 for false or fraudulent registration, which is not an action for trademark infringement. See Howard Johnson Co., Inc. v. Khimani, 892 F.2d 1512 (11th Cir. 1990) (upholding award of lost royalties as damages for violation of preliminary injunction against trademark infringement under 15 U.S.C. § 1117); Ramada Inns, Inc. v. Gadsden Motel Co., 804 F.2d 1562 (11th Cir. 1986) (upholding award of royalty fees as damages for trademark infringement under § 1117 and breach of franchise agreement); Bandag, Inc. v. Al Bolser's Tire Stores, Inc., 750 F.2d 903, 919 (Fed. Cir. 1984) (finding proper award of franchisee royalty fees as damages for trademark infringement under § 1117); Boston Prof'l Hockey Ass'n v. Dallas Cap & Emblem Mfg., Inc., 597 F.2d 71, 76 (5th Cir. 1979) (awarding license fee-based damages for trademark infringement under 15 U.S.C. § 1125); Deering, Milliken & Co., Inc. v. Gilbert, 269 F.2d 191 (2d Cir. 1959) (upholding award of royalty estimation as damages for trademark infringement); James M. Koelemay, Jr., Monetary Relief for Trademark Infringement Under the Lanham Act, 72

4

Trademark Rep. 458 (1982) (discussing a "reasonable royalty" as an appropriate alternative measure of damages under § 1117). Plaintiff cannot rely on authorities interpreting entirely distinguishable statutory provisions aimed at addressing different harms. Unlike damages in a trademark infringement case under 15 U.S.C. § 1117, where a lost royalty fee may adequately represent the damages for an infringing use since, theoretically, the use would only have been allowable upon payment of a royalty or license fee, there is no analogous correlation in the § 1120 context. The plain language of § 1120, which once again is not a statute dealing with trademark infringement, sets forth the available damages under that statute, and a plaintiff can recover only those damages "sustained in consequence" of the statute's violation. Plaintiff's alleged loss of the $2,000,000 license fee was not "sustained in consequence" of a registration purportedly induced by false or fraudulent statements. The license fee claim exists wholly independent of defendants' registration applications.

Second, to the extent that plaintiff seeks attorney's fees and other costs of bringing this action to seek cancellation of Yogi's trademark registration, such damages are not "clearly articulated" as arising from its § 1120 claim. Moreover, such a remedy is likely unavailable under § 1120 except in rare and "extraordinary" circumstances, such as where a defendant has fraudulently obtained a trademark registration solely for the purpose of harassing plaintiff with vexation litigation. Blue Bell, Inc. v. Jaymar-Ruby, Inc., 497 F.2d 433, 439 & n.16 (2d Cir. 1974) "([O]ur review of the cryptic legislative history of [§ 1120] convinces us that an implication of authorization for the extraordinary remedy of attorneys' fees would be equally unwarranted. . . . This is not to say that defense expenses can never be awarded in an action involving a false registration. One can conceive of a case where an absolutely false registration was fraudulently obtained solely for the purpose of instituting completely vexation litigation.");

Havana Club Holding, S.A. v. Galleon, S.A., No. 96 CIV. 9655(SAS), 1998 WL 150983, at *2 & n.7 (S.D.N.Y. Mar. 31, 1998) (concurring in the Seventh Circuit's doubt that amendments to § 1117 regarding availability of attorney's fees under that statute would change the Blue Bell holding that attorney's fees are unavailable under § 1120 except for in extraordinary circumstances). No such "extraordinary" circumstances exist here, and the exception left open by Blue Bell is wholly inapplicable on the pleaded facts. Compare Polo Fashions, Inc. v. Extra Special Products, Inc., No. 77 Civ. 5023, 1980 WL 30287, at *8 (S.D.N.Y. Mar. 5, 1980) (finding exception outlined in Blue Bell applied to permit attorney's fees where "[s]ince [defendants] had stopped using the trademark . . . a generation earlier, it is hard to conceive of any reason for the maintenance of that registration other than to use it improperly."). Here, unlike in Polo Fashions, plaintiff itself asserts that Yogi's was using the relevant trademarks in the operation of a restaurant in New Jersey. The court simply cannot conclude that the circumstances of this case are so extraordinary as to warrant a departure from the general presumption against an award of attorney's fees.

Third, and similarly, punitive damages are unavailable under § 1120 because they are not "sustained in consequence" of a violation thereof, so this cannot be a source of recovery against Kim. See Landstrom, 189 F.2d at 52-53 ("Exemplary damages are not the direct and proximate result or effect of such wrongful registration. [§ 1120] differs materially from the statute, 15 U.S.C. § 1117, which provides for recovery of triple damages within the discretion of the court for infringement of a registered trade-mark. . . . [§ 1120] does not authorize a court or jury to punish [a wrongdoer] as an example to others."); Simmonds Aerocessories, Ltd. v. Elastic Stop Nut Corp. of Am., 158 F. Supp. 277, 279 (D.N.J. 1958).

Finally, plaintiff asserts that it has been harmed because Kim has "blocked" its trademark applications for the relevant marks. In support of this claim, plaintiff asserts in its proposed amended complaint that Charlie Park filed a trademark application in October 2007 that was denied because of Yogi's antecedent applications. Proposed Am. Compl. ¶ 75. This fact is, however, irrelevant because Charlie Park is not the plaintiff in this case. Plaintiff goes on to allege that "[a]fter plaintiff received assignment of the Sik Gaek rights, on January 28, 2011, plaintiff . . . filed in essence a new trademark registration application with the [U.S. Patent and Trademark Office ('USPTO')]. This new filing by plaintiff was suspended by the USPTO as being in conflict with the fraudulent 'antecedent' applications filed by defendants." Id. ¶ 76. In support of this factual assertion regarding plaintiff's alleged attempt to register the Sik Gaek marks, plaintiff cites to a notice from the USPTO dated September 4, 2008, and sent to Chul Ho Park to notify him of the suspension of his trademark application number 77312839. Id., Ex. 36. The plaintiff entity is mentioned nowhere on this notice (notably, sent two and a half years before plaintiff allegedly "received assignment of the Sik Gaek rights"), and a search of the USPTO's Trademark Electronic Search System ("TESS") shows Chul Ho Park as the individual owner/applicant associated with that application number, with no mention whatsoever of plaintiff entity. Mindful that the parties have reached the summary judgment phase in this litigation, the court is appalled by plaintiff's sloppy pleading and citation to a document that is wholly unsupportive of its factual assertion. In fact, a USPTO document search reveals that the registration applications submitted on behalf of plaintiff to the USPTO in 2011 were suspended, not directly because of Yogi's antecedent applications, but because of the existence of this action instituted by plaintiff. See USPTO, Suspension Letter regarding Application Serial No. 85228447, sent to Sik Gaek, Inc. by email on 12/6/2011 (last accessed via USPTO Trademark

7

Status & Document Retrieval ("TSDR"), https://tsdr.uspto.gov/, on August 11, 2014) ("Because the civil proceeding(s) pertains to an issue that could directly affect whether applicant's mark can be registered, action on this application is suspended pending termination of the civil proceeding(s)."). Documents available through TSDR related to this application number show that, except for a period during which the application was treated as abandoned because plaintiff failed to respond to USPTO inquiries, the instant lawsuit has in fact been the stated, ongoing reason given by the USPTO for the application's suspension. See USPTO, TSDR, https://tsdr.uspto.gov/, search for application number 85228447 (last accessed on August 12, 2014). Although an attenuated argument could be made that, but for the allegedly false or fraudulent registration, plaintiff would not have been required to bring this action regarding the trademark, plaintiff has not made this argument in its papers, and moreover the connection is not "direct" as required by § 1120.

In any event, even if the suspension of plaintiff's application were a direct consequence of the allegedly false or fraudulent registration of the Sik Gaek marks, the court would nonetheless have to conclude that plaintiff has failed to show cognizable damages. Plaintiff has not in fact alleged any damages that it has suffered as a result of the suspension. To the extent that plaintiff could argue that the suspension of its own application has required it to incur costs and attorney's fees in order to pursue this action seeking cancellation of Yogi's registrations, the court has already discussed that those are not cognizable damages under § 1120. Plaintiff has alleged no other damages; there are no allegations of lost business, lost profits, damage to reputation, or other injury. The only damage that plaintiff continues to insist that it has suffered is the loss of the $2,000,000 royalty fee, which, as already addressed, is a direct result of the alleged breach of license claim, and not of the false or fraudulent registration claim. Plaintiff's

claim for its license fee, which has asserted through its state-law breach of contract claim, would exist independently in the absence of any false or fraudulent conduct violating § 1120.

The parties have proceeded through four years of discovery and reached the summary judgment stage, and plaintiff was warned that its proposed amended complaint must present its last and best pleading as to its § 1120 claim. Plaintiff has failed to state a cognizable claim for damages under § 1120, much less one that could survive summary judgment, and, accordingly, leave to amend its complaint to add this claim is denied.

## II. Plaintiff's other claims

Despite the court's directive to plaintiff that it should amend its complaint only to assert claims under §§ 1119 and 1120, plaintiff has taken this opportunity as license to throw everything in the pot, adding other new claims or reasserting previously dismissed claims in altered form, with a hodgepodge of citations to supportive and non-supportive documents sprinkled in.

Plaintiff's inventive "see what sticks" claims for "conspiracy to file false or fraudulent registrations" in Count Three and "fraud upon the USPTO" in Count Five are attempts to restate and circumvent what is essentially their futile statutory claim under § 1120. To the extent that Count Five also asserts a "fraud upon the court" claim, such a claim is primarily frivolous because one of the purposes of the court in this proceeding is to determine whether or not the registrations were fraudulent, and secondarily futile because plaintiff has failed in its pleadings to connect such asserted "fraud upon the court" with any injury to itself. Because plaintiff was not authorized by the court to assert these claims, and because they would be futile, the court will not grant plaintiff leave to assert them.

With respect to plaintiff's claim under 15 U.S.C. § 1125(a) in Count Four of the Proposed Amended Complaint, plaintiff is reminded that the court granted summary judgment to defendant Kim on this claim in its prior order, and reasserting it in amended form cannot resuscitate it.

The same is true with respect to plaintiff's breach of license claim against Kim. Plaintiff once again tries to circumvent a previous unfavorable ruling by asserting a "Piercing the Corporate Veil" claim against Kim in Count Six of the Proposed Amended Complaint. Veil piercing is not a stand-alone cause of action; rather it is a "narrow exception to the doctrine of limited liability for corporate entities," which in "extraordinary circumstances" allows an owner or shareholder of a corporation to be held responsible for the rights and duties of the corporation, e.g., for a breach of the corporation's contractual duties. EED Holdings v. Palmer Johnson Acquisition Corp., 228 F.R.D. 508, 512 (S.D.N.Y. 2005) (citing Murray v. Miner, 74 F.3d 402, 404 (2d Cir. 1996)). This court has already determined on summary judgment that plaintiff failed to plead or prove that the application of the veil-piercing doctrine should be applied in this case, and the court finds nothing submitted in plaintiff's Proposed Amended Complaint or related papers that would alter that conclusion, even were it appropriate for the court to reconsider its decision. Plaintiff's veil-piercing claim in its Proposed Amended Complaint is entirely conclusory, void of factual allegations, and fails to meet even the more lenient pleading standards under Federal Rule of Civil Procedure 8(a) read in light of Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009). The proposed pleading falls far short of the more demanding pleading standard under Rule 9(b) which applies to pleading claims where, as is the case here, the veil-piercing claim involves allegations of fraud. Fed. R. Civ. P. 9(b); see also Bravado Int'l Grp. Merch. Servs., Inc. v. Ninna, Inc., 655 F.

Supp. 2d 177, 196-97 (E.D.N.Y. 2009); EED Holdings, 228 F.R.D. at 512; In re Currency Conversion Fee Antitrust Litig., 265 F. Supp. 2d 385, 425 (S.D.N.Y. 2003). Accordingly, this claim also is futile and does not merit leave to amend.

## CONCLUSION

For the foregoing reasons, plaintiff is denied leave to amend its complaint to assert its proposed claims in Count Two (damages for fraudulent registration under § 1120), Count Three (Conspiracy to File False or Fraudulent Registrations), Count Five (Fraud Upon the Court and USPTO), and Count Six (Piercing the Corporate Veil), and defendant Kim is granted summary judgment as to plaintiff's action in its entirety. To the extent that plaintiff seeks leave to amend its complaint asserting claims against the remaining, non-appearing defendant Yogi's for cancellation under 15 U.S.C. § 1119, unfair competition under 15 U.S.C. § 1125(a), and breach of license agreement, it may do so. However, the amended pleading must be served on Yogi's and a new certificate of default must be obtained before plaintiff may move for default judgment against Yogi's.

SO ORDERED.

s/Allyne R. Ross

Allyne R. Ross
United States District Judge

Dated: August 13, 2014
Brooklyn, New York